

FILED

AUG 11 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SANTOS SANDOVAL, AKA Santos
Gonzalez-Sandoval,

Petitioner,

v.

LORETTA E. LYNCH, Attorney General,

Respondent.

No. 14-73749

Agency No. A206-406-299

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued April 15, 2016 Submitted August 9, 2016
San Francisco, California

Before: NOONAN, BEA, and CHRISTEN, Circuit Judges.

Santos Sandoval, a native and citizen of El Salvador, petitions for review of

a final order of removal from the Board of Immigration Appeals ("BIA"). The

BIA dismissed Sandoval's appeal of an Immigration Judge's ("IJ") denial of his

applications for asylum, withholding of removal, protection under the United

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Nations Convention Against Torture ("CAT"), and voluntary departure. We have jurisdiction under 8 U.S.C. § 1252. We grant the petition as to voluntary departure; we dismiss in part and deny in part the petition as to asylum, withholding of removal, and relief under CAT.

1. Sandoval first argues that the IJ erred in dismissing his asylum claim as untimely under 8 U.S.C. § 1158(a)(2)(B) because the IJ failed to make express factual findings regarding Sandoval's last date of entry. The IJ did not err because the statute does not require the IJ to make express findings, *see id.*, and Sandoval has not offered an alternate date of entry that would fall within the one-year bar. *Cf. Matter of F-P-R-*, 24 I. & N. Dec. 681, 684–85 (B.I.A. 2008) (holding that the IJ erred in calculating the one-year bar from the alien's 1989 date of arrival when record evidence showed that the alien left the United States, returned in 2005, and filed his asylum application less than one year later). To the extent Sandoval challenges the IJ's finding that Sandoval last entered the United States in 2003, this argument raises questions of fact that we lack jurisdiction to review. *See* 8 U.S.C. §§ 1158(a)(2)(B), 1252(a)(2)(D).

2. The IJ denied Sandoval's application for withholding of removal based on an adverse credibility finding, and the BIA affirmed. Sandoval contends that the record compels reversal of the IJ's adverse credibility finding because that

2

finding was based on contrived inconsistencies in Sandoval's testimony and immaterial omissions in his asylum application. We disagree.

Sandoval filed his petition after May 11, 2005, so the REAL ID Act governs. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010). We review an IJ's adverse credibility finding under the deferential substantial evidence standard, *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014), and "only the most extraordinary circumstances will justify overturning an adverse credibility determination," *Shrestha*, 590 F.3d at 1041 (citation omitted).

Here, substantial evidence supports the IJ's conclusion that Sandoval testified inconsistently about the series of events that led him to flee from El Salvador in 2003. Sandoval first told the IJ that members of the Mara Salvatrucha gang started harassing him in 2000, but later told the IJ that the harassment did not begin until 2002, after a leader of the gang shot at him. The IJ was entitled to base his adverse credibility determination on this inconsistency because Sandoval's confrontations with the gang leader and the Maras "formed the crux of his application for relief." *Id.* at 1047; *see also id.* at 1046–47 (upholding an adverse credibility finding where the petitioner testified that "Maoists had inquired about him on two occasions, in 1998 and 2001," but wrote in his declaration that

3

"Maoists have been inquiring about [his] whereabouts frequently" (alteration in original)).

Substantial evidence also supports the IJ's conclusion that Sandoval testified inconsistently about whether he had read a government report regarding his father's death. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (an IJ may base a credibility determination on the "internal consistency" and truthfulness of the applicant's oral testimony). Sandoval first told the IJ that he had read the report, but, when pressed, he admitted that he had not read it, but knew of its contents because his mother and brother had read the report.

**3.** Sandoval next argues that the proceedings before the IJ violated his due-process rights. Again, we disagree. The IJ gave Sandoval ample opportunity to testify about the past harassment he claimed to have suffered at the hands of the Maras and his fear of future persecution. Therefore, Sandoval's hearing was not "so fundamentally unfair that [he] was prevented from reasonably presenting his case." *Padilla-Martinez v. Holder*, 770 F.3d 825, 830 (9th Cir. 2014) (citation omitted); *cf. Cruz Rendon v. Holder*, 603 F.3d 1104, 1109 (9th Cir. 2010) (finding violation of due process where the IJ prevented the petitioner from testifying about her experiences and denied her a continuance to collect additional evidence).

4

**4.** Sandoval has not shown that "it is more likely than not" he will be tortured upon his return to El Salvador, so he has not established eligibility for relief under CAT. *See* 8 C.F.R. § 1208.16(c)(2).

**5.** Sandoval exhausted his petition for voluntary departure because the IJ discussed this form of relief, and the BIA affirmed the IJ's decision by citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (B.I.A. 1994). *See Chuen Piu Kwong v. Holder*, 671 F.3d 872, 877 (9th Cir. 2011) (when the BIA cites *Matter of Burbano*, "the IJ's discussion of [an] issue is sufficient, in and of itself, to overcome [an] exhaustion challenge").

The IJ denied Sandoval voluntary departure after concluding that his conviction under Cal. Penal Code § 273.5 was for a crime involving moral turpitude ("CIMT"). *See* 8 U.S.C. § 1229c(b)(1)(B) (an alien is eligible for voluntary departure only if "the alien is, and has been, a person of good moral character for at least 5 years"); *see also id.* §§ 1101(f)(3), 1182(a)(2)(A) (an alien is not of good moral character if he was convicted of a CIMT). The IJ determined that section 273.5 is broader than the generic federal definition of CIMT. *See Morales-Garcia v. Holder*, 567 F.3d 1058, 1064–65 (9th Cir. 2009). The IJ then decided that section 273.5 is divisible, and he denied relief after noting that "the

complaint[] clearly reflect[s] that the victim was the mother of the respondent's child."

The IJ did not have the benefit of recent case law that may bear on the question whether section 273.5 is categorically a CIMT and whether the statute is divisible. *See Mathis v. United States*, 136 S. Ct. 2243, 2256–57 (2016) (clarifying how to determine whether a statute is divisible and, thus, susceptible to the application of the modified categorical approach); *Carrillo v. Holder*, 781 F.3d 1155, 1158–59 (9th Cir. 2015) (finding that section 273.5 is categorically a crime of domestic violence); *People v. Burton*, 196 Cal. Rptr. 3d 392, 395–99 (Ct. App. 2015) (disagreeing with our conclusion in *Morales-Garcia v. Holder*, 567 F.3d 1058, 1064–67 (9th Cir. 2009), that section 273.5 is not categorically a CIMT). Accordingly, we grant Sandoval's petition for review with respect to his claim for voluntary departure and remand this case to the BIA to reconsider that claim. *See Ceron v. Holder*, 747 F.3d 773, 784 (9th Cir. 2014) (en banc) ("[T]he prudent course of action is to remand this case to the BIA to consider the issue in the first instance. . . . That first opportunity to decide is especially important because . . . we ordinarily defer to the BIA's determination whether a state statute categorically constitutes a crime involving moral turpitude.").

**PETITION GRANTED in part, DENIED in part, and DISMISSED in part; REMANDED.**  Each party shall bear its own costs.